UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE JAMES MARVIN ROTH,<br><br>                          Debtor, | Case No.: 18-cv-1475-GPC-BGS<br>Bankruptcy No. 10-07659-MM<br><br>**ORDER AFFIRMING BANKRUPTCY COURT'S ORDER OF JUNE 26, 2018** |
| DEBRA ANN ROTH, an individual,<br>                          Appellant,<br>v.<br>ANICE PLIKAYTIS, an individual,<br>                          Appellee. | |

     Before the Court is a bankruptcy appeal brought by Third Party Claimant – Appellant Debra Ann Roth ("Debra" or "Appellant") against Appellee Anice Plikaytis ("AP" or "Appellee"). The Court reviews the June 26, 2018 "Amended Tentative

Ruling" issued by Bankruptcy Judge Margaret M. Mann of the United States Bankruptcy Court for the Southern District of California. (R.[1] at 4-12.)

Pursuant to Civil Local Rule 7.1(d)(1) and Federal Rule of Bankruptcy Procedure 8019(b), the Court finds the matter suitable for adjudication without oral argument. For the reasons stated below, the bankruptcy court's June 26, 2018 Order is **AFFIRMED**.

## Background

On May 3, 2010, Debtor James Marvin Roth ("James") filed a voluntary petition under Chapter 11 of the Bankruptcy Code. (Bankruptcy Case No. 10-7659-MM11, Dkt. No. 1.) In August 2011, an evidentiary hearing was held concerning the approval of the Chapter 11 Plan. (Id., Dkt. No. 314.) At the end of the hearing, the court *sua sponte* made a motion to appoint an examiner. (Id., Dkt. No. 351.) On September 27, 2011, Christopher Barclay was appointed as the Chapter 11 Examiner. (Id., Dkt. No. 359.) On June 22, 2012, the Chapter 11 Plan was confirmed. (Id., Dkt. No. 483.) The Plan provided that "[p]ending any discharge of either or both Reorganized Debtors, all Creditors are enjoined and stayed from taking any action against the Reorganized Debtors, their estates, or property of their estates." (Id., Dkt. No. 509 at 55.) On August 29, 2012 the bankruptcy court approved an order directing that "Roth [James] and RMC are ordered not to incur any new debt or obligations, including by [sic] not limited to incurring guarantees, trade debt, secured loans or unsecured loan, without the approval of Anice Plikaytis[2] and the Disbursing Agent." (Id., Dkt. No. 535 at 16.) On April 5, 2013, James was authorized to borrow money from Debra's separate property on an unsecured basis and the estate and its property would not be liable for the loan. (Id., Dkt. No. 854.) According to Appellant, she lent money to James on an unsecured basis and claims $148,537 is due. (Bankruptcy Case No. 10-90359-MM, Dkt. No. 384, TPC ¶ 4.3)

---

[1] The Court refers to the Appellate Record in shorthand as "R." Otherwise, the page numbers are based on the CM/ECF pagination.
[2] Prior to the bankruptcy case, Anice Plikaytis obtained a judgment in San Diego Superior Court against James in 2009 and was awarded damages. In re Roth, 518 B.R. 63, 68 (S.D. Cal. 2014).

In August 2013, at a hearing on Anna Plikaytis' motion to convert James' case to a Chapter 7 liquidation, the bankruptcy court denied the motion to convert and amended the Plan and appointed former examiner Barclay to be the Post-Confirmation Estate Fiduciary. (Bankruptcy Case No. 10-7659-MM11, Dkt. No. 1002 at 2.) The Estate Fiduciary is vested with the authorities and responsibilities comparable to a trustee under 11 U.S.C. § 1104. (Id. at 3.)

On November 22, 2013, in the underlying adversary proceeding, Appellee Anice Plikaytis's ("AP") obtained a judgment in the bankruptcy court in the amount of $2,997,000 against James Roth for the portion of his debt to her under a final judgment entered in the San Diego Superior Court as nondischargeable. (R. at 73.)

On September 28, 2017, the bankruptcy court held a hearing concerning the completion of the Plan. (Bankruptcy Case No. 10-7659-MM11, Dkt. No. 1254 at 1.) Barclay, the Estate Fiduciary, sought abandonment of James' 100% equity interest in the Zanzibar rental properties as of October 1, 2012 and the bankruptcy court granted his motion. (Id. at 1, 5; R. at 90.)

In anticipation of the abandonment, on Saturday, September 30, 2017, Debra prepared a deed of trust to secure money she had loaned to James for necessary legal services and gave them to her husband unsigned knowing that the properties would be abandoned by the bankruptcy estate on Monday, October 2, 2017 and knowing that the actual liens could not be created until Monday, October 2, 2017. (R. at 115-116.) On the same day, Debra accompanied James to the notary public where he signed the Deed of Trust with Assignment of Rents with respect to Zanzibar properties. (Bankruptcy Case No. 10-903598-MM, Dkt. No. 442 at 55-56; R. at 39-43.) On Monday, October 2, 2017, James went to the San Diego County Recorder's Office and recorded the Deeds of Trust ("DOT") at 8:26 a.m. (R. at 116.) When he returned, James delivered the DOT to Debra and she accepted their delivery. (Id.) On October 2, 2017, the bankruptcy court issued an abstract of judgment on AP's judgment. (Bankruptcy Case No. 10-90359-MM, Dkt.

No. 244.)  On Tuesday, October 3, 2017, AP recorded her abstract of judgment with the County Recorder's office.  (R. at 67-70.)

On April 17, 2018, Debra filed a Third Party Claim asserting an interest superior to that held by Creditor AP in the monies received from rents owed to James based on his interest in the Zanzibar properties.  (R. at 4.)  An opposition was filed on April 30, 2018.  (R. at 3.)  Debra filed a reply.  (Dkt. No. 408.)  On May 10, 2018, the bankruptcy court issued a tentative ruling concluding that the Third Party Claim be overruled.  (R. at 88.)  The court found that the DOT was void as the acts preparing the DOT violated the automatic stay as the stay prohibits all actions against the property.  (R. at 93-94.)  On June 25, 2018, the court held a hearing and after allowing Debra to file a supplemental brief, issued an amended tentative ruling sustaining tentative ruling that overruled the Third Party Claim and entered judgment.  (R. at 3.)

Appellant challenges the bankruptcy judge's ruling that the "deed of trust under which Debra claimed as superior right to Zanzibar was prepared and executed in violation of the automatic stay was therefore void.  Since Debra's DOT was void, AP's objection to Debra's TPC was sustained."  (Dkt. No. 5 at 6.)  This conclusion is based on the bankruptcy court's finding that "the transfer was not initiated by James but by Debra and her request and for her benefit."  (R. at 6.)

## Discussion

A.    **Appellate Jurisdiction and Standard of Review**

The district court has jurisdiction to hear this bankruptcy appeal pursuant to 28 U.S.C. § 158(a)(1).  On appeal, the district court functions as an appellate court and the standard of review over a bankruptcy appeal is the same as used by circuit courts reviewing district court decisions.  See In re Baroff, 105 F.3d 439m (9th Cir. 1997).

Therefore, the court reviews a bankruptcy court's findings of fact for clear error and reviews its conclusions of law *de novo*.  In re Int'l Fibercom, 503 F.3d 933, 940 (9th Cir. 2007).  By well-settled rule, "factual findings are reviewable only for clear error-in other words, with a serious thumb on the scale for the bankruptcy court."  U.S. Bank Nat. Ass'n

4

ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC, 138 S. Ct. 960, 966 (2018). Whether the bankruptcy court applied the correct legal standard is a legal issue which is reviewed de novo. In re Karelin, 109 B.R. 943, 946 (B.A.P. 9th Cir. 1990).

"A mixed question of law and fact occurs when the historical facts are established; the rule of law is undisputed. . . and the issue is whether the facts satisfy the legal rule." In re Bammer, 131 F.3d 788, 792 (9th Cir. 1997) (citations omitted). The standard of review for a mixed question of law and fact depends on whether answering it entails primarily legal or factual work. U.S. Bank, 138 S. Ct. at 967. Where mixed questions immerse courts in case-specific factual issues, appellate courts should review a decision with deference. Id. Whether the automatic stay provisions of § 362(a) have been violated is a question of law reviewed *de novo*. In re Mwangi, 764 F.3d 1168, 1173 (9th Cir. 2014).

Here, Appellant argues that the Court should review the bankruptcy judge's order *de novo* as the essential facts surrounding the acts to establish the lien by the DOT is not disputed and she objects to the bankruptcy court's application of the law. Appellee contends that the "clear error" standard of review should apply where the court, based on undisputed facts, made findings of fact and applied the law.

Here, the Court concludes that the issue presented is a mixed question of law and fact and primarily focuses on the law. Appellant does not dispute the facts or the applicable law, but challenges the interpretation of the facts as applied to the law; specifically, the question raised is whether the violation of the automatic stay was debtor-initiated or creditor-initiated and whether the automatic stay provisions have been violated. Therefore, the Court reviews the bankruptcy order *de novo*.

**B.     Were DOTs Debtor-Initiated or Creditor-Initiated Transfers?**

Appellant challenges the bankruptcy court's conclusion that the "deed of trust under which Debra claimed as superior right to Zanzibar was prepared and executed in violation of the automatic stay" because the DOT, at issue, should have been governed by 11 U.S.C. § 549, not 11 U.S.C. §§ 362(a)(3) or (a)(4) because James, the debtor, initiated

the "transfer", not Debra, the creditor. In response, Appellee argues that the bankruptcy court properly found that the preparation and execution of the DOT by Debra was a creditor-initiated transaction, and a creditor imposed lien is a violation of the automatic stay provisions.

To determine which whether § 549 or § 362 applies, the Court must determine whether the transfer or action taken against the Zanzibar properties was debtor-initiated or creditor-initiated. Appellant argues that through § 362(b)(24)[3], an exception to the automatic stay provisions, § 549[4] applies to this case because the James, the debtor initiated the transfer. In contrast, Appellee argues that §§ 362(a)(3) and (a)(4) applies because the Debra, the creditor, initiated the transfer.

A bankruptcy petition imposes an automatic stay of any action against the debtor or property of the estate. See 11 U.S.C. § 362(a). The Ninth Circuit held that section 549 and section 362 apply to different types of actions. In re Schwartz, 954 F.2d 569, 573 (9th Cir. 1992).[5] Section 549 mostly applies to debtor-initiated transfers, id. at 574 ("Section 549 exists as a protection for creditors against unauthorized debtor transfers of estate property"), while section 362 applies to creditor-initiated transfers. See id. ("Section 362's automatic stay does not apply to sales or transfers of property initiated by the debtor."); In re Mitchell, 279 B.R. 839, 842 (9th Cir. BAP 2002) (We have interpreted Schwartz to mean that § 549 "does not apply to creditor-initiated transactions that violate the automatic stay, but only to debtor-initiated transactions that do not violate the stay."). As such, "the fundamental factor in determining whether analysis should

---

[3] Section 362(b)(24), enacted under the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") in 2005, provides that the filing of a bankruptcy petition does not operate as a stay under § 362(a) "of any transfer . . . that is not avoidable under section 549." 11 U.S.C. § 362(b)(24).
[4] Section 549 provides that a trustee "may avoid a transfer of property of the estate—(1) that occurs after the commencement of the case; and (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or (B) that is not authorized under this title or by the court." 11 U.S.C. § 549(a).
[5] The Ninth Circuit noted that the conflict between sections 549 and 362 is "troublesome." In re Schwartz, 954 F.2d at 573.

6

proceed under § 362 or § 549 is the identity of the transfer-initiating party." In re Ellis, 441 B.R. 656, 662 (D. Idaho 2010) ("If a creditor attempts to create an unauthorized post-petition lien on property of the estate, that transfer is void as a violation of the automatic stay" but if "a debtor in a bankruptcy case initiates an unauthorized post-petition transfer of estate property, the § 362 automatic stay does not apply."); In re Madill, Bankruptcy Case No. 11-61317-7, 2014 WL 1329284, at *9 (D. Mont. Apr. 1, 2014) (automatic stay provision of § 362 did not apply to transfer initiated by debtor).

Here, the parties do not dispute the facts concerning the events surrounding the DOT at issue but dispute their significance. The bankruptcy court determined that Debra, on her own initiative, typed up the DOT, and at her request, James executed a deed of trust against the Zanzibar properties, and then she accompanied James to get it notarized. (R. at 5, 9 ("DOT was entered into at her request and for her benefit. She also participated in the drafting and preparation."). The court concluded that it was clear that the transfer was initiated by Debra.

Without legal support or explanation, Appellant claims the creation of the DOT was debtor-initiated, not creditor-initiated because James "obtained a post-petition credit facility from Debra and created Debra's DOT." (Dkt. No. 5 at 14.) Appellant also argues that the bankruptcy court erroneously focused on the "initiation of the *transaction*" rather than the "initiation of the resulting *transfer*" but does not explain the significance of this difference or provide any legal support for her position. (Dkt. No. 5 at 13 (emphasis in original).) She further asserts "[h]ad the Bankruptcy Court correctly focused its analysis on who initiated the transfer than what initiated the transaction, the conclusion based on undisputed evidence was that it was James, and not Debra, who initiated the transfer effectuated by Debra's DOT" (id. at 14), yet provides no factual or legal explanation as to the significant of her assertion. These claims do not support her argument that the transfer was initiated by James, the debtor.

In 2005, with the enactment of the BAPCPA, Congress redefined "transfer" to mean

7

>   (A) the creation of a lien;
>   (B) the retention of title as a security interest;
>   (C) the foreclosure of a debtor's equity of redemption; or
>   (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—
>     (i) property; or
>     (ii) an interest in property.

11 U.S.C. § 101(54). Transfer now includes the creation of a lien. In re Ellis, 441 B.R. at 661 (citing H.R. Rep. No. 109–31(I), at 141). The Oxford English Dictionary defines "initiate" as "to begin, commence, enter upon; to introduce, set going, give rise to, originate, 'start'." Oxford English Dictionary (12th ed. 2011).

On Saturday, September 30, 2017, Debra knew that the Zanzibar properties would be abandoned by the bankruptcy estate on Monday, October 2, 2017. (R. at 115, Debra Suppl. Decl. ¶ 4.) She recognized that AP had a non-dischargeable judgment and she would take action to impose a lien on the properties so Debra had to act quickly to prepare deeds of trust to secure her loans by gaining priority over AP's judgment. (Id.) On September 30, 2017, Debra typed up two DOTs in order for James to record them as soon as the properties were abandoned. (Id.) The DOTs were signed and notarized on September 30, 2017 by James. (R. at 120, James Suppl. Decl. ¶ 5.) Debra accompanied James to the notary. (R. at 5.) After that, James maintained possession and control of the DOTs. (R. at 120, James Suppl. Decl. ¶ 6.) On Monday, October 2, 2017, at 8:26 a.m., James recorded the DOTs with the San Diego County Recorder's Office. (Id. ¶ 5.) When he returned, James handed the recorded DOTs to Debra. (Id.) James and Debra state they knew that liens could not be created before the abandonment was complete and the acts were done to prepare the DOTs so they could be later used to create liens to secure Debra's loans. (R. at 120, James Suppl. Decl. ¶ 8; R. at 115, Debra Suppl. Decl. ¶ 4.)

The undisputed facts mandate a conclusion that Debra initiated the process of creating a lien to secure her loan. While Debra appears to argue that James initiated the

8

transfer when he recorded the DOTs on October 2, 2017, the necessary and preparatory act of execution prior to recording the DOT was initiated by Debra and constitute the initiation of the transfer or initiation of the resulting transfer. Accordingly, the Court AFFIRMS the bankruptcy court's conclusion that the DOTs were creditor-initiated transfers; therefore, the transfer is subject to § 362(a), not § 549.

## C. Automatic Stay Provision, 11 U.S.C. § 362(a)

"Section 362 is *'extremely broad* in scope' and 'should apply to *almost any type* of formal or informal action against the debtor or the property of the estate.'" Delpit v. Comm'r, 18 F.3d 768, 771 (9th Cir. 1994) (emphasis in original) (quoting 2 Collier on Bankruptcy § 362.04 (15th ed. 1993)); Eskanos & Adler, P.C. v. Leetien, 309 F.3d 1210, 1214 (9th Cir. 2002) ("The scope of protections embodied in the automatic stay is quite broad, and serves as one of the most important protections in bankruptcy law."). "It is designed to provide breathing space to the debtor, prevent harassment of the debtor, assure that all claims against the debtor will be brought in the sole forum of the bankruptcy court, and protect creditors as a class from the possibility that one or more creditors will obtain payment to the detriment of others." Burton v. Infinity Capital Mgmt., 862 F.3d 740, 746 (9th Cir. 2017). The stay "prevents any collection activity against property of the estate." In re LPM Corp., 300 F.3d 1134, 1136 (9th Cir. 2002). A creditor's action that violate the automatic stay of § 362(a) is void. In re Schwartz, 954 F.2d at 571.

### 1. 11 U.S.C. § 362(a)(3)

Appellant contends that there has been no violation of § 362(a)(3) because the purpose and policy of § 362(a)(3) were not violated. The legislative purpose of the automatic stay is to provide equality of distribution among creditors; however, in this case, because the Zanzibar properties were being abandoned on October 1, 2017, they would not be providing a source of distribution to any creditors and any action taken at the end of the Plan does not violate the purpose of the automatic stay. Therefore, section 362(a)(3) is not applicable. Appellee disagrees.

9

11 U.S.C. § 362(a)(3) prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The parties dispute whether Debra's act of drafting the DOT is "an act . . . to exercise control over property of the estate."

The bankruptcy court explained that Debra's argument "unduly restricts the scope of the automatic stay" and her citation to cases are not supportive. The court noted that the legislative history endorses a policy of fair treatment to creditors and by having insider information Debra took advantage of that to the detriment of AP, another creditor. (R. at 10.) Moreover, by "jumping the gun by use of insider status to obtain a priority lien over another creditor, affected the estate albeit for a short term." (R. at 11.)

Plaintiff cites to In re City of San Bernardino, 558 B.R. 321 (C.D. Cal. 2016) for the proposition that § 362(a)(3) was intended to prevent dismemberment of the estate during bankruptcy proceedings for an "orderly distribution of the debtor's assets" at the conclusion of the case. In City of San Bernardino, the district court concluded that a lawsuit seeking injunctive relief to prevent the City from committing unlawful searches is subject to the automatic stay under § 362(a)(3). The issue before the court was whether an intentional tort and constitutional claims against a municipality arising post-petition are subject to the automatic stay provisions of, *inter alia*, 11 U.S.C. § 362. Id. at 327. The court explained that how the City uses its money to pay employees' salaries clearly constitute the City's "property" and an injunction effectively exercises control over the money. Id. at 329. Also, indirectly, a citywide injunction enjoining search and seizure practices would force the City to spend money to reduce crime that it may not otherwise have spent. Id. The court focused on whether the conduct is an "attempt to directly exercise control over the property of the bankruptcy estate." Id. at 328. Although the question was a close one, the court ultimately held that the injunction fell under § 362(a)(3).

Appellant's attempt to rely on City of Bernardino is not persuasive. City of Bernardino does not support Appellant's proposition that § 362(a)(3) is not violated by

conduct to exercise control over property that would not be part of the distribution to creditors one day prior to abandonment. On the contrary, Debra's act of preparing the DOT is an "attempt to directly exercise control over the property of the bankruptcy estate." See id.

Moreover, Appellant's reliance on In re Chugach Forest Products, Inc., 23 F.3d 241 (9th Cir. 1994) is not supportive of her position. In that case, the court concluded that § 362(a)(3) does not apply to an "indirect exercise of control." Id. at 244. The creditor arrested the vessel on which the debtor's property was loaded onto. Because the vessel was not the debtor's property and "did not threaten dismember the bankruptcy estate or impede the reorganization proceedings", its "incidental effect" was not enough to trigger a stay. Id. at 245. In contrast, here, Debra's act of attempting to gain priority of her loan over another creditor is an attempt to exercise direct control over the property.

Appellant supports the ruling in In re Roach, 660 F.2d 1316 (9th Cir. 1981) cited by the bankruptcy court but misunderstands its ruling. In Roach, the Ninth Circuit held that the district did not err in upholding the bankruptcy court's ruling that the debtor had no equity interest in the property at issue and preliminary or preparatory steps to conduct a post-petition trustee's sale, except the sale itself, did not violate the stay because these steps "merely maintained the status quo and did not harass, interfere or gain any advantage." Id. at 1318-19. In contrast, in this case, Debra's preparatory acts were, as Debra admits, mean to gain an advantage over AP's non-dischargeable judgment. Therefore, the preparatory acts were a violation of § 362(a)(3).

Here, Debra sought to exercise direct control over the properties of the estate by imposing a lien through an assignment of an interest in the rents. Appellant has failed to provide any authority that a stay violation at the end of a bankruptcy case may be disregarded because the property to be abandoned will not be a source of distribution to creditors. Therefore, the Court AFFIRMS the bankruptcy court's ruling that § 362(a)(3) was violated by the DOT.

/ / / /

## 2. 11 U.S.C. § 362(a)(4)

Appellant argues that "creation of a lien" occurred when the DOT was recorded on October 2, 2017, after the properties had been abandoned; therefore, a mere execution and retention of the DOT by James do not implicate or constitute a violation of the automatic stay under § 362(a)(4). Appellee disagrees contending that the automatic stay was violated when Debra presented her DOT and assignment of rents to James for execution and these preparatory acts violated the stay.

Section 362(a)(4) bars "any act to create, perfect, or enforce any lien against property of the estate" and is a bar to the automatic stay. 11 U.S.C. § 362(a)(4). This section distinguishes between "creating" and "perfecting" a lien. See id.

The bankruptcy court explained that § 362(a)(4) not only addresses a completed transfer but applies to "any act", and the preparatory and necessary step towards creation of a lien fall under this provision even if the lien was not effective. (R. at 11.)

The use of "any act" is construed broadly by courts. See e.g., St. Paul Fire & Marine Ins. Co. v. Barry, 438 U.S. 531, 550 (1978) (statutory language was broad and unqualified because it covers "'any' act"); United States v. Vallejos, 742 F.3d 902 (9 Cir. 2014) (word defined broadly to include "any act"). Moreover, an "assignment does not create a lien; rather, it is the original execution of the deed of trust that creates the lien and the original recording that perfects the lien." In re Lunn, Bankruptcy Case No. 16-20163-PRW, 2016 WL 5349726, at *5 (W.D.N.Y. Sept. 23, 2016); In re Sprouse, Bankruptcy Case No. 09-31054, 2014 WL 948490, at *4 (W.D.N.C. Mar. 11, 2014). These courts distinguish between the creation and perfection of a lien. It is well settled that a "trust deed creates a valid lien on real property to secure a debt for which it is executed . . . ." Perego v. Seltzer, 260 Cal. App. 2d 825, 829 (1968); see St. Angelo v. Victoria Farms, Inc., 38 F.3d 1525, 1534 (9th Cir. 1994), modified 46 F.3d 969 (1995) (citing Monterey S.P. Partnership v. W.L. Bangham, Inc., 49 Cal. 3d 454, 460 (1989)) ("A 'deed of trust' creates a lien on the property in favor of the creditor.").

The Court disagrees with Plaintiff's argument and concludes that Debra's drafting of the DOT for James' execution constitutes an "act" to create a lien against the property of the estate.[6] Accordingly, the Court AFFIRMS the bankruptcy court's ruling that § 362(a)(4) was violated. Because the automatic stay was violated under § 362(a)(3) and (a)(4), the Court AFFIRMS the bankruptcy court's conclusion that the DOT is void.

## Conclusion

For the reasons stated above, IT IS HEREBY ORDERED that the May 18, 2018 Bankruptcy Order is AFFIRMED. The hearing set for December 14, 2018 shall be **vacated**.

IT IS SO ORDERED.

Dated: December 10, 2018

Hon. Gonzalo P. Curiel
United States District Judge

---

[6] Because the Court affirms the bankruptcy court's order, the court does not need to address Appellee's argument that Appellants lacks standing to bring the appeal.

13

18-cv-1475-GPC-BGS
Bankruptcy No. 10-07659-MM